**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BENTLEY,** | ) | **CASE NO. 1:06 CV 1832** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **L & M LIGNOS ENTERPRISE,** *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court upon defendants' Motion for Summary Judgment. (Doc. 20) This case arises out of the death of James Lee Warren. For the reasons that follow, the motion is GRANTED as to Counts One through Three. Counts Four and Five are DISMISSED without prejudice.

**FACTS**

Leah K. Bentley, as the administratrix of the estate of James Lee Warren ("Warren"), brings this action on behalf of the estate against L.M. Lignos Enterprise, Louis Lignos & Sons, Inc., and M.L. Lignos, Inc. (collectively, "defendants") asserting wrongdoing in

connection with Warren's death.[1, 2]  Bentley, as guardian of Warren's minor child G.W., also asserts a derivative claim against defendants.

Defendant L.M. Lignos Enterprise ("Enterprise") was an Ohio general partnership with two partners:  defendant Louis Lignos & Sons, Inc. and defendant M.L. Lignos, Inc.  Both partners were Ohio corporations.  Enterprise was in the business of bridge rehabilitation and painting.  Since the occurrence of the events that led to this action, the partnership and its two partners have ceased all business operations.  At all relevant times, Warren was an employee of Enterprise.

On August 29, 2003, Warren was employed as a carpenter foreman on a rehabilitation project on the Fort Pitt Bridge over the Monongahela River in Pittsburgh, Pennsylvania.  Warren's job was to set "forms" on the bridge piers so that new concrete could be poured into the forms after deteriorated concrete had been removed.  On August 29, Warren and Enterprise's laborer foreman, John Garvin, donned life jackets provided by Enterprise and boarded a small motor boat.  They drove the motor boat less than 50 feet to a work platform barge moored to the Fort Pitt bridge.  The barge was used, in part, to catch the deteriorated concrete as it was chipped off of the bridge.  Warren tied the boat to the barge and the two men boarded the barge.  After boarding the barge, Warren and Garvin removed their life

---

[1] The Complaint names "L & M Lignos Enterprise" as a defendant.  Defendants answer that the correct name of that entity is "L.M. Lignos Enterprise."

[2] The Complaint also names John Does I-IV, pursuant to Ohio R. Civ. P. 15(d).  The Complaint has not been amended to assert the true names of these defendants.

jackets and placed them back in the motor boat.

Warren and Garvin then ascended to the top of a pier of the bridge via a scaffold and performed some repair work on the bridge.  After performing some work, the men descended to the barge and prepared to board the motor boat and return to shore.  At some point, Garvin had his back to Warren.  When Garvin turned to face the motor boat, the boat was no longer tied to the barge.  Garvin saw Warren in the river approximately 20 feet from the barge.  Warren did not have a life jacket on.  Garvin threw a rope to Warren, but Warren did not grab the rope.  Warren sank into the river and Garvin dove in and tried to locate Warren.  Garvin was unable to do so.  Garvin returned to the barge and called 9-1-1.  Rescue divers arrived on the scene and recovered Warren's body.

The Complaint asserts five causes of action.  Count One alleges defendants violated Section 905(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq*.  Count Two alleges negligence under general maritime law.  Count Three alleges violation of the Jones Act, 46 U.S.C. § 688.  Count Four alleges defendants committed an intentional tort that caused Warren's death.  Count Five is a derivative count alleging defendants are liable to Warren's minor child G.W. for the wrongs alleged in Counts One through Four.  Defendants move for summary judgment on all counts.  Plaintiff opposes the motion.

**STANDARD OF REVIEW**

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. United*

*Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material fact rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).  A fact is material only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 255); *see also United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).

Summary judgment is appropriate when a party who bears the burden of proof at trial fails to make a showing sufficient to establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

"The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 252). Moreover, if the evidence is "merely colorable" or is not "significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

**DISCUSSION**

### 1. Longshore and Harbor Workers' Compensation Act

In Count One, plaintiff alleges negligence of the barge under Section 905(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* (the "LHWCA"). Under the LHWCA, an employer is strictly liable to an injured employee or to the estate of a deceased employee under a workers' compensation scheme. 33 U.S.C. § 904. Importantly, such liability is exclusive of all other liability for the employer. 33 U.S.C. § 905(a). However, Section 905(b) provides that a *vessel* may be liable to the employee for negligence:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.
>
> \* \* \* \*
>
> The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

33 U.S.C. § 905(b). The meaning of the term "vessel" also includes the vessel owner. 33

5

U.S.C. § 902(21).  If the vessel owner and the employer are the same entity, that entity can be liable under Section 905(b) if it was negligent acting in its capacity as the vessel owner but *not* in its capacity as plaintiff's employer.  *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 532 (1983), *superceded in part by statute*, 33 U.S.C. § 905(b) (1984) (eliminating the right to bring such "dual-capacity" suits for ship builders, repairers, and breakers).

Under Section 905(b), a vessel owner has a duty to exercise due care under the circumstances.  *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 166 (1981).  Whether a vessel owner is negligent is a matter of federal maritime law rather than state law.  H.R. Rep. No. 92-1441, 1972 U.S.C.C.A.N. at 4705 ("The Committee does not intend that the [section 905(b) action] shall be applied differently in different ports depending on the law of the State in which the port may be located . . . [but] that legal questions . . . shall be determined as a matter of Federal law.").

A vessel owner owes a duty to exercise ordinary care to turn over the vessel and its equipment in such a condition that one will be able to carry out his duties on the vessel with reasonable safety to persons and property.  *Scindia*, 451 at 167.[3]  The vessel owner also has a duty to warn of any hazards on the vessel or with respect to the condition of its equipment at

---

[3]

> This "turnover" duty applies to the vessel owner's duty to turn over the ship in a non-negligent condition. Typically, the owner turns over the operations of the ship to another, usually a stevedoring company. The stevedore is responsible for overseeing the loading or unloading of the vessel. The stevedore's employees - longshoremen - handle the loading or unloading of the vessel. The "active control" duty and the "duty to intervene", discussed below, apply after the vessel owner has turned over the operation of the vessel to the stevedore. These duties also apply where the vessel owner acts as its own stevedore or vessel operator. *See Jones & Laughlin*, 462 U.S. at 532.

the time the vessel is turned over.  *Id.*  This duty to warn extends only to hazards that the owner knows of or should know of in the exercise of reasonable care and that are likely to be encountered by the employees in the course of their duties and are not known by or obvious to the employee.  *Id.*  This duty is termed the "turnover" duty.  *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98 (1994).

The vessel owner may also be liable if it is actively involved in the operations of the vessel after it has turned over operation of the vessel to another.  The owner must exercise reasonable care to avoid injury to an employee and to avoid exposing the employee to hazards from equipment under the active control of the vessel.  *Scindia*, 451 U.S. at 167.  This second duty is termed the "active control" or "active operations" duty.  *Howlett*, 512 U.S. at 98.

Finally, while the vessel owner does not have a common law duty to inspect or supervise operations after it has turned over control of the vessel, the owner does have a duty to act where it knows of a malfunction in the gear aboard the vessel and that malfunction poses an unreasonable risk of danger to employees.  *Scindia*, 451 U.S. at 175.  This duty is referred to as the "duty to intervene."  *Howlett*, 512 U.S. at 98.  This duty to intervene also applies if the malfunction existed before the owner turned over control of the vessel and the owner knew of or should have known of the malfunction.  *Scindia*, 451 U.S. at 176.

Defendants move for summary judgment on the ground that, among other things, any alleged negligence is attributable, if at all, to Enterprise as Warren's employer not to Enterprise as owner of the barge.  Plaintiff does not dispute this contention but, rather, simply states that Enterprise was the owner of the barge and, as such, did have a duty to provide Warren with a safe means of egress from the barge to the boat.  Plaintiff sets forth no

7

evidence or argument to dispute defendants' position that Enterprise's actions or lack thereof should be attributed to it as Warren's employer rather than as the vessel owner.

While the U.S. Supreme Court has not undertaken to delimit the boundary between an entity as an employer and as a vessel under the LHWCA, the First Circuit's thorough discussion of this subject is instructive.  In *Morehead v. Atkinson-Kiewit*, 97 F.3d 603 (1st Cir. 1996), Atkinson-Kiewit was both the owner of the vessel at issue and plaintiff's employer.  The plaintiff argued that defendant should be held liable for an unsafe condition on the vessel.  Defendant countered that the unsafe condition was created during operation of the ship while the employees were acting for the defendant in its capacity as their employer. The *Morehead* court agreed with defendant, stating that the employer is the entity responsible for the safety of the workplace and for any injuries that occur; the vessel, or the employer in its vessel capacity, is not implicated except in the unusual circumstance that the vessel itself continues to exercise active control over the work area.

> Therefore, *Scindia's* principle of limited liability of the vessel sensibly and logically applies, because the employees effectively assumed control of the barges working under [defendant] in its capacity as their employer.  [Defendant] qua shipowner had no separate captain and crew assigned to the barge.  The allegedly negligent conditions (the open hatch and the absence of warnings) were not attributable to the errors of separate maritime agents acting specifically for the vessel.  Rather the alleged acts of negligence were those of fellow harbor workers acting within the scope of their daily employment for the employer.  *Cf.* 33 U.S.C. § 905(b) (prohibiting liability of an employer-vessel owner for acts "caused by the negligence of persons engaged in providing stevedoring services to the vessel").

*Morehead*, 97 F.3d at 614; *see also Dietlin v. United States Steel Corp.*, 779 F.2d 50 (6th Cir. 1985) (affirming a grant of summary judgment for defendant and stating that to impute

8

negligence on the part of the employees to the defendant as vessel owner would effectively ignore the exclusive liability provision of Section 905(b)).

The Court agrees with defendants in the present case that if there was any negligent conduct, such negligence is attributable to Enterprise as Warren's employer, not as the vessel owner. Defendants have met their burden on this point and plaintiff has not put forth any evidence or argument to contradict it. Fed. R. Civ. P. 56(e) ("the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). Because the LHWCA provides explicitly that an employer's exclusive liability is to pay compensation under Section 904, Enterprise cannot be held liable under Section 905(b) in its capacity as employer. Accordingly, defendants' motion for summary judgment is granted as to Count One.

### 2. General Maritime Law

Defendants move for summary judgment on Count Two on the ground that the claim for negligence under general maritime law is precluded by the exclusivity provisions of the LHWCA. Plaintiff does not oppose the motion for summary judgment as to Count Two.

Therefore, defendants' motion for summary judgment is granted as to Count Two.

### 3. Jones Act

In Count Three, plaintiff asserts a cause of action under the Jones Act, 46 U.S.C. § 688. The Jones Act provides:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any

9

>such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statues of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable.

46 U.S.C. § 688.[4]

The parties agree that *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995), sets forth the test for determining whether or not one is a "seaman" for purposes of the Jones Act. *Chandris* states that the "essential requirements for seaman status are twofold." First, "an employee's duties must 'contribute to the function of the vessel or to the accomplishment of its mission.'" *Chandris*, 515 U.S. at 368. "[T]his threshold requirement is very broad: All who work at sea in the service of a ship are eligible for seaman status." *Id.* Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.*

---

[4]

>The Court notes that the Jones Act was amended by Public Law 109-304, October 6, 2006, codified at 46 U.S.C. § 101, *et. seq*. Public Law 109-304 was enacted to consolidate separately-enacted laws governing shipping into a single codification of the law.  46 U.S.C. § 688 was replaced by 46 U.S.C. § 30104, which provides:
>
>>A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.
>
>Neither party asserts that these changes are substantive. This is consistent with the legislative history which states that Public Law 109-304 "codifies existing law rather than creating new law" and that the changes "are not intended to lead to changes in result, and therefore they should not impair the precedent value of earlier judicial decisions or other interpretations."

10

> The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

*Id.*

The question of who is a seaman is a mixed question of law and fact. *Chandris*, 515 U.S. at 369.  Interpretation of the statutory term seaman is a question of law for the Court.  *Id.* If "reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury."  *Id.*  However, "where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict."  *Id.* (remanding for a determination of whether the docked cruise ship, on which plaintiff was injured, was "in navigation").

In applying the two-part test, the court should "focus upon the essence of what it means to be a seaman and to eschew the temptation to create detailed tests to effectuate the congressional purpose, tests that tend to become ends in and of themselves."  *Id.* at 369. Accordingly, "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon."  *Id.* at 370.

Defendants argue that plaintiff cannot meet either prong of the *Chandris* test, because Warren merely used the barge as a transfer point from the motor boat to the bridge where he performed his carpentry duties.  Plaintiff contends that whether Warren was a seaman is a

highly factual inquiry that is not amenable to summary judgment.  Plaintiff asserts that a reasonable jury could find for Warren, because when Warren was performing his bridge rehabilitation duties he "worked on the work barge all day."  Defendants respond that the testimony relied upon by plaintiff for this statement does not establish that Warren spent any appreciable amount of time on the barge.

In setting forth the two-part test, the *Chandris* court repeatedly emphasized that a land-based employee who happens to spend some of his time on a vessel is not a seaman just because he happens to have been working on board a vessel when he was injured.  *E.g., Chandris*, 515 U.S. at 361.  The court must consider both the duration of the worker's connection to the vessel and the nature of his activities.  *Id.* at 370.  A maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land-based and, therefore, not a seaman, regardless of his duties while on the vessel.  *Id.* at 371 (also stating as a general guideline:  "A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act.").

While the parties do not establish exactly what percentage of time Warren spent on the barge at the Fort Pitt Bridge, it is clear that Warren's connection to the barge was not "substantial in terms of both its duration and its nature" as required by *Chandris*.[5]  Warren

---

5

> Both parties assert that *Arnold v. Luedtke Eng'g Co.*, 196 Fed. Appx. 331 (6th Cir. 2006), supports their cause.  However, the facts of *Arnold* are distinguishable from those of the present case.  In *Arnold*, plaintiff was employed by defendant to fix a retaining wall along the Erie Canal.  Plaintiff was the sole captain of the tugboat used to push a barge from Michigan to the work site in Buffalo, New York.  There was evidence that for more than half of the project - 20 weeks worth -

was a carpenter foreman.  His duties involved chipping concrete from the bridge, making concrete forms, and pouring concrete into the forms.  Warren used the motor boat to travel approximately 50 feet from shore to barge.  He then used the barge as a transfer point from the motor boat to the scaffolding on the bridge pier, upon which he performed his carpentry duties.

Plaintiff points to pages 40 and 53 of the deposition transcript of John Garvin, the laborer foreman who was working with Warren on the date in question, to support her contention that Warren's job required him to work on the barge "all day."  However, Garvin's testimony does not support plaintiff on this point.  The testimony on page 40 related to whether or not Garvin descended to the barge and remained there for his mid-morning break rather than returning to shore.  And, the testimony on page 53 merely establishes that any member of the crew could clean off the work barge and tow the debris from the barge to shore.  Neither piece of evidence establishes that Warren's job as a carpenter foreman who made forms to do cement work provided a substantial connection, both in terms of duration and nature, to a vessel in navigation.  Because plaintiff has not met her burden under Fed. R. Civ. P. 56(e) to establish that there is a genuine issue of material fact for trial, summary judgment is granted as to Count Three.

### 4.     Intentional Tort

---

> plaintiff worked almost exclusively on the barge.  Plaintiff also piloted a work raft at times and worked aboard the raft when welding steel plates onto the retaining wall.  Plaintiff was also responsible for inspecting and making repairs to the barge each morning.  The Sixth Circuit reversed a grant of summary judgment in favor of defendant, because there were sufficient facts for a reasonable jury to conclude plaintiff was a seaman.

13

Plaintiff's fourth cause of action is before the Court on pendant jurisdiction.  Plaintiff seeks relief for alleged intentionally tortious conduct under Ohio common law.  Having disposed of the federal claims in this lawsuit, the Court declines to exercise supplemental jurisdiction over this claim.  *Valot v. Southeast Local School Dist. Bd. of Educ.*, 107 F.3d 1220 (6th Cir. 1997).[6]  The Court finds that the state court is the proper forum to address this claim.  Accordingly, Count Four is dismissed without prejudice.

### 5. Derivative Claim

Count Five is derivative of and depends upon the survival of Counts One through Four.  Because the Court has disposed of Counts One through Four, Count Five must fail as well.  *See Graham v. Am. Cyanamid Co.*, 350 F.3d 496 (6th Cir. 2003).  Accordingly, Count Five is dismissed without prejudice.

### **CONCLUSION**

For the foregoing reasons, defendants' Motion for Summary Judgment is GRANTED as to Counts One, Two, and Three.  Counts Four and Five are DISMISSED without prejudice. IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 9/21/07

---

[6]  It is apparent from the face of the Complaint that complete diversity is lacking.

14